[Civ. No. 5032. Second Appellate District, Division Two.—December 21, 1928.]

LUCILE GREENLAW LITCHNER, Respondent, v. ROY STAPLES, Appellant.

John B. Haas and John D. Home for Appellant.

M. D. Andrews for Respondent.

CRAIG, J.—The respondent, owner of lot 9 of the Gardena tract, Los Angeles County, instituted suit for cancellation of a lease to appellant of the northerly 125 feet of the easterly 100 feet thereof, alleging that her lessee had sublet a portion of said premises in violation of covenants, and without her knowledge or consent. It was contended by the defendant that there was a mutual mistake regarding the description of the property described in the sublease, but that he had previously obtained the consent of his lessor, and he further urged as defenses estoppel *in pais,* and novation. Judgment was rendered in favor of the plaintiff, and this is an appeal therefrom.

It appears that on December 1, 1922, the respondent executed a lease to appellant for the period of five years of one garage and filling station, "said building to be used only as a general garage and machine shop and filling station and for no other purpose." It was therein agreed: "That the lessee shall not assign this lease nor any rights thereunder nor sublet the premises or any part thereof (only for the purpose pertaining to and carrying on a general garage and machine shop) without the written consent of the owner, under penalty of forfeiture, this building and premises to be kept free of any nuisance in or around and adjacent thereto at the expense of lessee." At the time of the execution of said lease, a firm doing business under the name of Blanton and Young occupied a plot alleged and testified by respondent as being 25 feet long and 25 feet deep, in the southeasterly corner of the demised premises, under a sublease from a prior lessor, which they continued to occupy as lessees of the appellant. During the month of September, 1923, negotiations initiated by Blanton and Young for the sale of their leasehold interests to one D. J. Biesinger were communicated to Mrs. Litchner by a real estate agent who solicited her consent to such transfer and change of subtenants. It is conceded that respondent visited the premises with her husband on September 19, 1923, where she met Biesinger and several other persons at which time the agent measured the entire depth of the 100-foot lot, to its

westerly line, and that Biesinger indicated that he desired to place a garage on the rear 75 feet but that respondent "refused to have anything to do with the transaction, stating that she wished to see her attorney." Thereafter she did, however, sign an instrument which read as follows:

"I or we, the undersigned, give our consent for R. V. Blanton, C. B. Young to transfer their lease to Douglas Biesinger.

"Dated Sept. 19, 1923.

"(Signed) Lucile M. Greenlaw Litchner."

On October 1, 1923, appellant herein and D. J. Biesinger entered into a lease which, with the deleted words indicated, appears in part as follows:

"That Roy Staples of the county of Los Angeles, state of California, lessor, does hereby lease, demise and let unto J. D. Biesinger of said county lessee, O. K. Roy Staples The east twenty-five (25) feet of the south twenty-five (25) feet of the east one hundred (100) feet of the north one hundred twenty-five (125) feet of lot nine (9) of the Gardena Tract.

"This lease is subject to conditions and restrictions contained in a certain lease from Lucile M. Greenlaw-Litchner to Roy Staples, dated Dec. 1st, 1922, . . .

"Written permission for this lease has been obtained by the lessor as required by this lease."

As opposed to Mrs. Litchner's contention that although Blanton and Young may have used the rear of the lot for a garbage pit, toilet, oil-tank, and storage of wood and coal, they did so without her consent, and that she at no time intended to sublet more than the front 25 feet, Staples testified that he had not seen their lease, and supposed that it conveyed the entire 100 feet; further, that he and Biesinger both believed that the latter was leasing the whole lot, and that upon discovery of its narrow limitation appellant personally and out of the presence of respondent struck out the words, "The east twenty-five (25) feet of"; also that he understood from numerous conversations with respondent that she intended leasing 100 feet, that at none of their conferences had she denied such to be the fact, and that he honestly entertained the impression that Mrs. Litchner believed the entire lot to have been included in the Blanton and Young lease.

■ There is strong affirmative evidence tending to support the plaintiff's allegations and the findings and judgment below. Mrs. Litchner positively testified that prior to signing the consent she examined the lease to Blanton and Young and that she observed, and told appellant, that the lot was 25 by 25 feet; that when it was suggested that Biesinger contemplated erecting a building costing $3,000 or $3,500, she stated: "They can't, because the property is too little and the space is only 25 by 25." She testified further: "At no time did I consent to a sub-letting to the said Douglas J. Biesinger, or anybody else, the west 75 feet of the east 100 feet of lot 9," and that she did not know that this had been done until about December 4, 1923. Her husband testified that he was present during the negotiations, and that while there was some discussion about leasing the small corner and property adjoining it to the south, "in the presence of Mr. Staples Mrs. Litchner said to the Biesingers, 'You haven't got the 25 by 100 feet. All you have is 25 by 25 feet.'" The trial court found that respondent notified appellant in writing on December 5, 1923, of her election to forfeit the lease in controversy, that she had previously consented to the subletting of only 25 by 25 feet, but that Staples caused the words "the east 25 feet of" to be stricken from the description without her consent, and "that the property by mutual mistake was erroneously described" was untrue. There is considerable corroborative evidence which tends to support these findings. It is clearly a case where the trial court before whom the witnesses appeared in person, and to which all other evidence was presented, is invested with the duty and power of finally determining the issues.

Appellant attempts to substantiate his contention by the fact that the predecessors of his sublessee had used the rear of the premises for depositing rubbish and for other purposes without objection by the lessor, except that she had expressed the opinion that such use might infringe upon certain health laws, and asserts this as an admission of Mrs. Litchner's knowledge and consent to their use of additional land, and of appellant's intention to sublet the rear 75 feet of lot 9. Doubtless this circumstance was considered by the trial court, but apparently was not regarded of controlling

weight, and it is not within our province to say that its conclusion was incorrect.

■ From the foregoing it becomes unnecessary to devote extensive discussion to appellant's remaining propositions. Equitable estoppels *in pais* "generally, if not universally, are applied to prevent injury which would ensue to one from the acts or declarations of another, were he permitted to gainsay the truth of such acts or declarations. The principle is invoked and applied for the prevention of fraud, or that which is tantamount thereto, on the one side, and injury on the other." (*Davis* v. *Davis*, 26 Cal. 23, 39 [85 Am. Dec. 157]; *Pope* v. *J. K. Armsby Co.*, 111 Cal. 159 [43 Pac. 589].) As already observed, the trial court found upon much substantial evidence that respondent did not by silence or by her acts lead the appellant to believe that he had a right to lease the additional territory, and from this we must conclude that there was no fraud or misrepresentation upon which appellant relied to his injury.

■ The plea of novation is equally untenable. It is insisted that after giving written consent to a sublease to Biesinger of the land described in the Blanton and Young sublease, respondent finally instructed the parties to "fix it up to suit themselves, that she wanted her tenants to be satisfied." Appellant urges from this premise that he was justified in subletting more than the Blanton and Young property, and that the restriction against it was waived. However, there is no evidence that by this expression Mrs. Litchner intended to enlarge or forego any of the provisions of the original lease, and there is strong positive evidence to the contrary, from which the court found in favor of the plaintiff. True, appellant offered evidence tending to show that he so understood his lessor's intentions, but his allegations and testimony were apparently disbelieved, and we cannot as a matter of law, under the facts and circumstances, say that such conclusion was erroneous.

■ Rulings of the trial court in sustaining objections to testimony offered by appellant are assigned as error. Respondent having admitted that Blanton at one time complained about Japanese who occupied land owned by her to the south of the 25 by 25 foot plot, saying there "was a talk," she was asked as to what the conversation was. Blanton testified that he had a conversation with Freeman con-

cerning the amount of property he desired to sublet, and was asked to state that conversation. Objections were sustained, and it is argued that any evidence relating to knowledge of the lessor, or acknowledgment by her, that other lands were being used, would be admissible as tending to establish an estoppel; that Blanton could have maintained in an ejectment suit by Freeman, that by mutual mistake 25 by 25 feet was not the correct description. Upon the assumed facts stated, such testimony might have been admissible, but the Blanton lease specifically described the lot as being 25 by 25 feet, and there is no evidence in the record that Blanton claimed or understood otherwise. Evidence as to his objection to the use which a neighbor might have made of adjoining property, or of conversations which may not have been communicated to the respondent, would not be relevant or admissible.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.